## LUND *v.* LUND.

Where an administrator, after his appointment, proceeds in good faith to collect the debts due to the estate, although the money may be well invested and drawing interest, he will not, for that reason merely, be charged with interest upon the same, if he does not, without cause, keep the money unemployed when it is his duty to pay it over, or receive interest thereon, or use the same in his own business.

An administrator will not be allowed, on the settlement of his account, for money paid out for car or coach fare for himself and wife, or for a sister and her husband, to attend the funeral of a brother, nor will the administrator be allowed pay for his time or services in attending such funeral.

Our statute only authorizes administrators or executors to procure gravestones and monuments where the estate is actually solvent; and where this is the case, he should be allowed only for plain and substantial gravestones, at a reasonable cost.

Fifteen to thirty dollars, according to circumstances, is a reasonable sum to allow for grave-stones, where the estate upon settlement does not exceed $3000, and should not exceed the latter sum in any such case.

If the administrator of such an estate is desirous of expending a larger sum for a monument, he should first procure the assent of the heirs at law.

In presenting an administration account, it is no objection that the administrator has omitted to enter the items of interest and commissions; and these items and amounts may properly be added by the judge of probate, after adjusting the balances and considering the other circumstances of the case.

APPEAL from the decree of the judge of probate, allowing the account of Joseph S. Lund, the defendant, as administrator of Jonathan W. Lund, late of Concord, in our county of Merrimack, deceased, intestate. The decree allowing the administrator's account was made at a court of probate held December 28, 1859, and the appeal was taken to the next term of this court holden in the county.

The reasons set forth and assigned by the appellant, Augustus A. Lund, for his appeal, were as follows:

(1) Because it appeared at the court of probate that although the administrator had collected the whole amount of the estate, had paid all expenses of administering, and all debts and demands, with the exception of the expense

of a monument to the deceased, and had deposited the balance in a bank to his own use, November 1, 1858, yet he was not charged with interest thereon from that time to the time of the decree ;

(2) The administrator was credited six dollars for his services and time, and five dollars and eighty cents for car-fare and coach-fare for himself and wife, from Concord to Nashua and back, to attend the funeral of the deceased, the administrator's brother ;

(3) The administrator was credited six dollars and eighty cents by him paid to James Brown, brother-in-law of said deceased, for car-fare of Brown and wife to attend the funeral of her deceased brother ;

(4) The administrator was credited one hundred and seventy-six dollars and ninety-five cents for grave-stones and monument and fence round the same, for the deceased and others ;

(5) The administrator was credited forty-four dollars commission on the money collected for and paid out of the estate, the same not being charged in his account when presented for settlement on the day of the decree.

The case was referred to an auditor to state the facts, who reported, among other things, that Jonathan W. Lund, the intestate, died while an inmate of the New-Hampshire Asylum for the Insane, September 8, 1858, and was buried at Nashua, N. H., about two miles below the village, on the next day. He had never been married, and the heirs at law to his estate were his mother, of Nashua, his sister, Mrs. James Brown, of Bow, N. H., and his brothers Joseph S. Lund, of Concord, N. H., the appellee, James F. Lund, of Wisconsin, and Augustus A. Lund, of Illinois, the appellant.

On the morning of September 8, 1858, word was sent from the asylum to the appellee that said deceased was in a dying condition ; whereupon he went to the asylum and found his brother unconscious. He then went to Bow,

about two miles, with his horse, and carried his sister, Mrs. James Brown, to the asylum, where they remained till their brother died, between eleven and twelve o'clock at noon. The appellee then carried Mrs. Brown home to Bow, and spent the afternoon of the day in procuring a coffin, a box for the same, and the grave-clothes, and in making arrangements to have the body carried by cars to Nashua the next morning.

Mrs. Brown went to Nashua the afternoon of the same day, and the appellant and his wife, and Mr. James Brown, went to Nashua with the body the next morning, September 9; the funeral was on the afternoon of the same day, at the house of the mother of the intestate, and Mrs. Brown returned home to Bow the same day, the appellant and his wife and Mr. Brown remaining till the afternoon of September 10, when they returned. During that day the appellee settled some bills for the funeral expenses. The mother of the deceased being aged, and having no help, the preparations for the funeral were mostly made by Mrs. James Brown and the wife of the appellee. The deceased was buried in a lot which contained the graves of his father and a sister, with a vacant space for the grave of the mother.

The appellee was appointed administrator of the estate of said deceased September 28, 1858.

He had received in cash from various sources, prior to October 10, 1858, $3,146.55; February 3, 1859, he received, for property not appraised, $21.12; making the total of assets received by him, $3,167.67.

Prior to October 20, 1858, he had deposited $3,000 in the Mechanicks Bank, in Concord, and took a receipt in his own name. Prior to August 9, 1859, he had drawn this whole sum from the bank. He at all times kept deposited and used the money belonging to the estate as his own money, except that he always kept from $1,000 to $1,500 on hand for the purpose of paying off the heirs, or any other claims that might come against the estate.

The deceased left no books or papers showing the condition of his estate; and there was some talk and correspondence among the heirs about a will having been left by the deceased; and some of the notes due him were found in the hands of the makers of the same. The appellee had some apprehensions that such a will might be produced, and that there might be debts against the estate of which he had no knowledge. For these reasons he refused to pay over to the heirs their respective shares, unless they would give·him security to refund in case of necessity. November 22, 1858, he paid to Mrs. James Brown the sum of $400, on the conditions aforesaid. December 2, 1858, he loaned to one Green $1,400 belonging to the estate, which was paid at various times in payments of a few hundred dollars each; and upon settling his account of administration he was charged with $65 as being the amount of interest received on this $1,400.

The appellee procured a granite monument to be erected at the grave of the deceased, with a suitable inscription; also, an iron fence around his grave, and including the lot before described, containing the graves, &c., aforesaid, the lot being about eight by thirteen feet. There were gravestones previously erected at the graves of the father and sister. The whole cost of the monument and the fence, preparing and grading the ground, and the personal services of the administrator in procuring and erecting the same, was $176.95. Mr. and Mrs. Brown only had been consulted in relation to this matter; and Mr. Brown objected to the fence and to the kind of a monument first talked of, and Mrs. Brown said she would not object if the whole expense did not exceed $200.

When the appellee presented his administration account for settlement it was objected to, and a new account was made, and a hearing had thereon; and after the hearings were finished the judge of probate directed the register to make out the account in proper form, and in that account

the judge ordered the register to charge the administrator with $65 interest, and credit him with $44 as commissions, although no credit of interest had been made on either of the accounts as presented by the administrator, and no charge for commissions was entered on the last account thus presented, though there was upon the first.

The auditor found that of the money received by the appellee prior to October 10, 1858, $2,687.44 was safely loaned and drawing interest; and it was not for the benefit of the estate to collect the same, and deposit it in a bank where no interest was allowed for it. He therefore charged the administrator with interest on the balance of this money, after deducting what had been paid out, amounting to the sum of $137.24, instead of the $65 charged to him by the judge of probate. He also found that the items of the account specified in the second, third, fourth, and fifth reasons stated in the appeal, were, under the circumstances, properly allowed by the judge of probate.

*A. S. Marshall*, for the appellant.

*Minot & Mugridge*, for the administrator.

SARGENT, J. The true rule to be applied in charging administrators with interest is well settled. In all cases where the administrator, without any just reason or excuse, retains the money in his own hands unemployed, when it ought to be paid over, in all cases where he receives interest for money which belongs to the estate, and in all cases where he applies money belonging to the estate to his own use, he ought to be charged with interest. *Stearns* v. *Brown*, 1 Pick. 530; *Wyman* v. *Hubbard*, 13 Mass. 232; *Griswold* v. *Chandler*, 5 N. H. 497; *Mathes* v. *Bennett*, 21 N. H. 199; *Wendell* v. *French*, 19 N. H. 205.

The auditor finds in this case that the appellee had collected and deposited in bank, prior to October 20, 1858, the sum of $3,000 in his own name; that he drew $1,400

of this money on or before December 2, 1858, to loan to Green, and drew all the balance before August 9, 1859, and used the whole as his own money; yet that he kept on hand $1,000 or $1,500 for the purpose of paying off the heirs, or any other claims that might come against the estate. It appears that the appellee had some apprehensions that there might be debts outstanding, or that a will might be found; but it seems that he was ready to pay over to the heirs this money which he had on hand, at any time when they would give him an obligation to refund the same should such will or debts be found to exist; and one of the heirs did receive a portion of the money in that way and on those conditions. We consider that a reasonable precaution on the part of the administrator, under the circumstances stated; and upon this state of facts he cannot be charged with the interest on the ground that he retained the money in his hands unemployed, without any just reason or excuse, when it was his duty to pay it over.

Nor can he be charged with the interest upon the second ground, that he had actually received interest upon the money more than he had been charged with; because, if he testified truly that he had actually kept a large amount ($1,000 or $1,500) on hand for the purposes stated, he was probably charged with about the amount of interest actually received. Nor does the evidence show that he had used any more of the money belonging to the estate in his own business, than he had kept of his own in readiness to meet the contingencies stated. He would not seem to be chargeable upon either of the grounds stated in the rule above given. The auditor finds that it was not for the interest of the estate for the administrator to collect the moneys which were safely deposited and drawing interest, and deposit them in a bank where no interest was allowed upon them, and upon that ground charged him with interest. But these facts may all be as stated, and yet afford no good reason for charging the appellee with interest. It

Lund v. Lund.

may have proved not to be for the best interest of the estate, and yet the administrator may have acted in the most perfect good faith. We cannot find that the administrator did wrong in collecting the money he found belonging to the estate, under the circumstances stated in the report; and we have already seen that, after having the money in his possession, he kept and used it in a way that seemed reasonable, and has already been charged with such interest as he actually received. We therefore find that the conclusions arrived at by the auditor upon this point do not follow, as necessary conclusions of law, from the facts which he states; but we think that, upon the facts stated, the decree of the judge of probate on this point must be sustained.

The auditor finds that the items of account specified in the second, third, fourth, and fifth reasons for the appeal, were, under the circumstances, properly allowed; but upon the facts stated by him, we are forced to a different conclusion as to the second, third, and fourth items. The items mentioned in the second and third reasons for appeal, stand substantially upon the same grounds. We do not understand that any thing is charged or allowed for Mrs. Brown's services at Nashua, though she, with Mrs. Lund, the appellee's wife, made the arrangements at the mother's house for the funeral; nor do we understand that any charge is made for the services of Mrs. Lund in that behalf. But the charge is, in case of Brown, for paying his and his wife's fare to Nashua and back to attend the funeral of Mrs. Brown's brother; and in case of the administrator, the charge is for fare of himself and his wife to Nashua and back to attend the funeral of his own brother, and also for services at the rate of two dollars per day during September 8, 9, and 10, 1858,—the days when the administrator was attending himself, and was bringing his sister to attend, at the death-bed of an unfortunate brother, and awaiting there to see him die; in procuring his

coffin and shroud, attending his funeral, and remaining till the day after, with the bereaved mother.

Now it seems to us that these were services to the performance of which true affection would always prompt, without any expectation or desire of pecuniary remuneration. Economy would suggest that if mourners must be hired at a funeral, it would be better to procure those as near by as possible, and thus save paying their fare; and it would seem to be much more in accordance with the common notions of propriety, if men must be procured for pay to perform such services, that indifferent strangers be selected, rather than brothers and sisters. Tears that flow to order, and are shed for a price, should find no place when men stand around the death-bed or the coffin of parents or children, brothers or sisters. We think these items in the administration account should be disallowed, even though the auditor found that after the funeral was over the administrator did settle and pay some of the expenses of the funeral, though it does not appear what or how many bills he paid.

The charge for a monument is also, we think, too high. If all the heirs had consented, there could have been no impropriety; but, on the other hand, there might have been a marked propriety in thus adorning the final resting-place, not only of the intestate, but of his parents and sister; and it would seem that this expense was incurred, probably as much on account of the father and sister, as the son and brother. But administrators are to act in good faith to the heirs, for whom they hold the property of the intestate in trust, and should administer estates economically; and should only furnish such plain and substantial monuments as shall be proper for them to erect with the property of others, without their consent. However proper and commendable it might be for the remaining children to erect beautiful and costly monuments to the memory of their departed parents and friends, yet the offering should be voluntary on the part of all concerned.

We think that courts of probate should require that administrators, when they are acting on their own responsibility in furnishing monuments with the money of others, without their consent, should practice strict economy in their expenditures; that they should conform to the provisions of the statute in that particular. The statute provides that administrators of estates actually solvent may erect suitable monuments at the graves of the testators or intestates, and the reasonable expense thereof shall be allowed them on the settlement of their accounts. Rev. Stat., ch. 159, sec. 16; Comp. Laws 408.

The statute gives no authority to administrators to purchase monuments or gravestones of any kind, where the expense of them shall come out of the creditors of the estate; for it is only in cases where the estate is actually solvent that any such authority is given, and even then, where the expense is to be borne in the end by the heir, the administrator is only to be allowed the reasonable expense of a suitable monument. In this case, to be sure, there are no children, nor is there any widow; but this does not make the property any more that of the administrator than as though there were. He holds it for the legal heirs, whoever they may be; and although he might be justified in exercising a larger discretion in the one case than in the other, yet in both he should be held to such reasonable expenditure as will be sufficient for plain and substantial gravestones or monuments; and we think that in estates of the amount of this, a proper rule should be, that the administrator should furnish stones or monuments at an expense varying from fifteen to thirty dollars—not to exceed the latter sum in any case; and that this is all that should be allowed in the present case. When administrators wish to go beyond this in estates no larger than the present, they should procure the assent of the legal heirs; and then there can be no objection to a monument such as their taste or liberality may suggest. The fence,

in this case, cost some sixty dollars; and as to that, the case of *Tuttle* v. *Robinson*, 33 N. H. 117, would seem to be decisive.

As to the item of commissions mentioned in the fifth reason for appeal, we see no occasion to interfere with it, as allowed by the judge of probate; nor was it material whether this item, or that of interest, was or was not entered upon the account of administration as originally presented for settlement, or at the hearing. We understand that it is the usual course, in presenting accounts of this kind for settlement, that these two items are either omitted altogether, or are merely entered beneath the other items of debt and credit, and the amounts left blank; and in either case to be entered, or the amounts carried out, as shall be found just and reasonable by the judge of probate, upon striking the balances and considering all the circumstances of the case. We see no objection to this course of procedure. So far as these two items are concerned—the interest and the commissions—we think no injustice has been done to any one, and that these items in the account must remain as settled by the judge of probate.

In accordance with these views, it follows that, from the amount found in the administrator's hands on settlement, including the interest, which sum was     $3,232.67 there must be deducted as follows:

| | |
|---|---:|
| Funeral charges, | $50.25 |
| Charges of last sickness, | 120.75 |
| Paid for gravestones, | 30.00 |
| Expenses of administration : | |
| Cash paid out, | 49.30 |
| Personal services, | 29.50 |
| Commissions, | 44.00 |

Making in all,                                     323.80

Leaving a balance in the hands of the administrator, December 28, 1859, of              2,908.87

Let a decree be entered charging the administrator with the above sum, as of that date, if he has paid out the money to the several heirs under the former decree; if he has not done so, then let interest be cast upon the above sum and added thereto, and a decree be entered for the whole amount as of the present time, and that the appellant recover the costs of appeal.